# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**MARIO ELIAS,**                                   Chapter 7
                                                    Case No. 12-10215-JNF

        Debtor

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**DELORES COWART**,

        Plaintiff

v.                                                  Adv. P. No. 12-1083

**MARIO ELIAS,**
        Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the "Complaint Objecting to Discharge of Debtor"

filed against Mario Elias ("Elias") by Delores Cowart (the "Plaintiff") through which she

alleges that Elias committed an assault and battery against her which was "willful and

malicious" and caused her injury (the "Complaint").   Although the Complaint is

denominated as an objection to discharge, the Plaintiff seeks to except a particular debt

from discharge pursuant to 11 U.S.C. § 523(a)(6), as well as a jury trial.   The Court

conducted a trial on May 21, 2013 at which Elias was the sole witness and four exhibits

1

were introduced into evidence.  Following the trial, both parties filed post-trial briefs.

At the outset of the trial, the Court ruled that there were no allegations in the Complaint stating a claim for denial of discharge pursuant to 11 U.S.C. § 727, and the Court dismissed any claim for denial of discharge.[1]  The Court also ruled that there was no right to a jury trial in an exception to discharge proceeding and struck the Plaintiff's jury demand.[2]  In response, counsel to the Plaintiff stated that "[w]e'll accede to the Court's ruling . . . ."

The issues presented are whether Elias's admission in a state court criminal proceeding to sufficient facts to support a conviction for an assault and battery on the Plaintiff has preclusive effect in this exception to discharge proceeding, and whether the elements of the crime of assault and battery under Massachusetts law are sufficient to establish the elements of willful and malicious injury under 11 U.S.C. § 523(a)(6).

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 (a) and (b) and the order of reference from the United States District Court for the District of Massachusetts.  This is a core proceeding pursuant to 28 U.S.C.  § 157(b)(2)(I).  The Court now makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

---

[1] The Complaint contains no separate counts and merely references "11 U.S.C. § 727" in the introductory paragraph, without citation to any subsection.  It contains no allegation which, if proven, would be grounds for denying Elias's discharge under § 727.

[2] The Plaintiff had no right to a jury trial.  S*ee* <u>Murphy v. Felice (In re Felice)</u>, 480 B.R. 401, 435 (Bankr. D. Mass. 2012).

2

## II. FACTS AND PROCEDURAL HISTORY

Elias filed a voluntary petition under Chapter 7 of the Bankruptcy Code on January 11, 2012. On his Schedule A- Real Property, Elias listed real property located at 21 Oak Street, Milton, Massachusetts (the "property") as his "former residence . . . believed [sic] in foreclosure proceedings." On his Schedule D - Creditors Holding Secured Claims, Elias listed the Plaintiff as the holder of an attachment on the property based on a "Claim for Negligence and Negligent Infliction of Emotional Distress, 2008, contained in Suffolk County Civil Action No. 11-1396." Elias received a discharge of dischargeable debts on April 10, 2012. He was represented by counsel in his bankruptcy case.

On April 6, 2012, the Plaintiff timely filed the Complaint. Elias filed an Answer, *pro se*, on May 11, 2012. Through the Complaint, which consisted of two pages, the Plaintiff alleges that on or about May 12, 2009, a criminal complaint was issued against Elias from the Trial Court of the Commonwealth of Massachusetts, Boston Municipal Court Department (the "Criminal Complaint") containing two counts for assault and battery and two counts for indecent assault and battery arising from an incident which occurred on April 14, 2008 at Bunker Hill Community College in Charlestown, Massachusetts (the "College") where the Plaintiff was a student and Elias was an employee. The Plaintiff further alleges that Elias admitted to sufficient facts for a finding of guilty on Count 1 of the Criminal Complaint, namely assault and battery pursuant to Mass. Gen. Laws ch. 265, § 13A.

The Plaintiff further alleges in the Complaint that on April 8, 2011 she commenced

a civil action against Elias in the Suffolk County Superior Court seeking monetary damages against Elias for personal injuries "arising from the incident" without any details or an explication of the nature of the incident.  On July 20, 2011, that court (Holtz, J.) issued a Writ of Attachment in the sum of $500,000 in favor of the Plaintiff with respect to the property.  Notably, the Plaintiff pleaded virtually no facts in the Complaint about the underlying assault and battery or the specific conduct involved.  She merely attached copies of the "Tender of Plea or Admission to Sufficient Facts Waiver of Rights" (the "Admission") signed by Elias on January 11, 2011, the Criminal Complaint, which contains virtually no factual allegations concerning the assault and battery, and a copy of the Writ of Attachment.  The Complaint contains a reference to 11 U.S.C. § 523(a)(6), and the prayer for relief is a request to "deny discharge of the debtor as to the Suffolk Superior Court complaint."[3]

This Court issued a Pretrial Order on May 17, 2012 which required the parties to file a Joint Pretrial Memorandum setting forth, *inter alia*, a list of witnesses they expected to testify at trial as well as facts about which the parties agreed and which would require no proof.  The parties filed their Joint Pretrial Memorandum on December 17, 2012.  The Plaintiff listed eight witnesses, including herself, to be called as witnesses at trial. Elias

---

[3] As discussed below, the Suffolk Superior Court complaint is based solely on Elias's negligence.  In light of the caption of the Complaint in this adversary proceeding and the prayer for relief, the Court can only conclude that the Plaintiff had no familiarity or understanding of the standards applicable to exceptions to and/or denial of discharge under 11 U.S.C. §§ 523 and 727 prior to commencing this adversary proceeding.

listed four potential witnesses, including himself, and three individuals connected with the College.[4]  The parties also reported in the Joint Pretrial Memorandum that they were unable to stipulate to any facts and that all facts alleged in the Complaint were in dispute.

## III. THE EVIDENCE ADDUCED AT TRIAL

At trial, the Plaintiff called only Elias as a witness and introduced only two exhibits, namely certified copies of the Criminal Complaint, dated May 12, 2009, and the Admission, dated January 11, 2011. The Plaintiff established no factual background concerning the Plaintiff's injury caused by Elias other than that an incident occurred between them at the College on April 14, 2008 which gave rise to criminal charges against Elias as set forth in the Criminal Complaint.

The Criminal Complaint contains two counts against Elias for assault and battery pursuant to Mass. Gen. Laws ch. 265, § 13A (Counts 1 and 2), and two counts for indecent assault and battery on a person over the age of 14 pursuant to Mass. Gen. Laws ch. 265, § 13H (Counts 3 and 4).  It references an offense date of April 14, 2008 and the location of the offense as the College but contains no reference to the Plaintiff by name.  Count 1 of the Criminal Complaint, entitled "A&B C265 S13A" provides as follows:

> Did assault and beat [sic] known to the Commonwealth, in Violation of G.L. C.265, S. 13A (Penalty: House of Correction Not More Than 2 1/2 Years; Or Not More than $1,000.)

---

[4]  At trial, Elias called no witnesses, having failed to properly serve several subpoenas on potential witnesses.  By orders dated May 20, 2013, the Court quashed the subpoenas on motions filed by the Plaintiff and a potential witness.

The Criminal Complaint contains separate handwritten dispositions with respect to all of the counts.  Counts 2, 3 and 4 are noted as "dismissed."  With respect to Count 1, the notation indicates "CFFS-CWOF for 11 months to 12/14/11." There are also handwritten notations providing "Stay away from XY" and references to $65 and $90 fees or charges.  Counsel to the Plaintiff explained at trial that the disposition of Count 1 was "continued without a finding," better known as a "CWOF."

The Plaintiff also introduced the Admission, dated January 11, 2011, bearing Elias's name as the defendant and the same docket number referenced on the Criminal Complaint.  Section 1 of the document, entitled "Tender of Plea," provides, in part, the following:

> Defendant in this case hereby tenders the following . . . [check mark] ADMISSION TO FACTS SUFFICIENT FOR A FINDING OF GUILTY conditioned on the dispositional terms indicated below . . . .

After the above, the document contains the following handwritten notations under the heading "Defendant's Dispositional Terms:"

> Count A: [count 1] Assault and Battery 11 Month CWOF + stay away from Delores Cowart [the Plaintiff] + her family . . . .  Count B: Ct. 2-4 Dismiss on successful colloquy.

Section IV of the Admission, entitled "Defendants's Waiver of Rights . . . " provides for the defendant's waiver of the rights to a jury trial, to confront accusers and to assert the privilege against self-incrimination.  Additionally, that section contains an acknowledgment that the admission was made voluntarily, with "aware[ness] of the nature and elements of the charge . . . to which I am entering my . . . admission."  Section VI,

entitled "Judge's Certification," provides, in part, the following:

> . . . I [the judge] find, after a colloquy with the defendant, that the defendant has knowingly, intelligently and voluntarily waived all of these rights as explained during these proceedings and set forth in this form.  After a hearing, I have found a factual basis for the charge(s) to which the defendant is . . . admitting to sufficient facts and I have found that these facts . . . admitted to by the defendant would support a conviction on the charges to which the plea or admission is made. . . .

Elias testified that both the presiding judge and his criminal defense attorney, Tony Fugate, explained the Admission form to him and that he understood their explanations. The trial court accepted the Admission, and it was signed by Elias, Attorney Fugate and the presiding judge on January 11, 2011, more than eighteen months after the date of the Criminal Complaint. Elias read the pertinent provisions of the document into the record at trial during direct examination by the Plaintiff, following which the Plaintiff rested her case without submitting further evidence regarding the details of the incident which took place between Elias and the Plaintiff on April 14, 2008 or the full procedural history of the criminal case which culminated in the Admission.  When the Court asked Plaintiff's counsel why he did not call the Plaintiff as a witness, he responded: "Because I didn't think it was necessary, Your Honor.  That's why."[5]

As stated above, Elias appeared *pro se* at the trial. He introduced a certified copy of the Boston Municipal Court - Central Division docket of the criminal case.  The docket

---

[5] After the Plaintiff rested and following Elias's testimony in defense of the Plaintiff's case, the Plaintiff attempted to introduce an affidavit of a Massachusetts State Police officer.  Elias objected.  The Court sustained the objection, finding that the affidavit was inadmissible as hearsay.  *See* Fed. R. Evid. 801(c).

reflects that a trial was conducted in January 2010 which resulted in a deadlocked jury and

a mistrial.  A second trial commenced in November, 2010 and ended in another mistrial on

the basis "manifest necessity." The January 11, 2011 docket entry is consistent with the

handwritten dispositions contained on the Criminal Complaint discussed above.   The

docket entry, in relevant part, provides:

> Tender of Admission -Filed-Accepted by Court . . . As to Count 1 CFFS-
> CWOF to December 14, 2011. . . As to Counts 2, 3, 4 @ Request of the
> Commonwealth Vacate . . . With the Consent of the Defendant.

The conditions of the CWOF reflected on the January 11, 2011 docket entry are also

consistent with those  handwritten on the Criminal Complaint, namely: "Stay away from

Victim and her family, $90 victim witness fee due Feb 9, 2011, $65/month probation

supervision fee or community service."  Accordingly, Count 1 of the Criminal Complaint

was continued without a finding to December 14, 2011, a date eleven months from the date

of the Admission.

Elias testified that following the two mistrials, he was overwhelmed with working

full time and caring for his son while his wife was ill and that he could not face the

prospect of another trial.  He testified that he sought to end the criminal proceeding by

admitting to sufficient facts on Count 1.  Elias explained that he intended to comply with

the conditions imposed by the Admission for eleven months and that "this would put an

end to a criminal case that resolved [sic] in two trials, a process that last [sic] two years and

eight months, about 1,002 days, and it costs [sic] me about $15,000 for each trial."

At this juncture, Elias, while still under oath, provided a narrative explanation of

the events that occurred on April 14, 2008.  He testified that he and the Plaintiff were

involved in what he considered a "consensual touching" at the College on that date which

the Plaintiff later reported as an assault, resulting in criminal charges.  The Plaintiff's

attorney did not examine him on this point.  To buttress his position on lack of intent to

harm, Elias introduced a copy of the civil Complaint filed against him by the Plaintiff in

Suffolk Superior Court (the "Civil Complaint").  The Civil Complaint contains detailed

factual allegations concerning the sexual nature of the incident between the parties and

asserts a claim for negligence (Count One) and a claim for negligent infliction of emotional

distress (Count Two) based on the allegation that Elias "negligently failed to comprehend

that [the Plaintiff] did not wish to engage in sexual contact with him" which resulted in

injuries to her.  With respect to the Admission on the assault and battery charge, Elias

maintained that this was not a finding of guilt.  He also maintained in his opening

statement that he believed that the debt owed to the Plaintiff was based on negligence and

therefore was dischargeable in his bankruptcy case.

## IV. POSITIONS OF THE PARTIES

The Plaintiff asserts that the Admission provides sufficient basis for determining that

the Plaintiff's claim is one for willful and malicious injury and therefore is nondischargeable

under 11 U.S.C. § 523(a)(6).  She relies primarily on Commonwealth v. Welansky, 316 Mass.

383, 55 N.E.2d 902 (1944), and Hermosilla v. Hermosilla (In re Hermosilla), 450 B.R. 276

(Bankr. D. Mass. 2011), *aff'd*, In re Hermosilla, MB 11-045, 2011 WL 6034487 (B.A.P. 1st Cir.

Nov. 14, 2011).[6]  Additionally, she relies on <u>Commonwealth v. Porro</u>, 458 Mass. 526, 529,

939 N.E.2d 1157 (2010), in which the Massachusetts Supreme Judicial Court explained that

criminal assault and battery in Massachusetts takes two forms, "intentional" and "reckless."

Based on that distinction, the Plaintiff contends that Elias's execution of the Admission

means that he "admitted to *either* (a) an intentional assault and battery, which by definition

was a willful, malicious act, or to (b) a wanton or reckless assault and battery, which caused

the Plaintiff physical harm." (emphasis added).

Elias contends that he did not willfully and maliciously injure the Plaintiff, that she

consented to his touching and that, at most, his conduct was negligent based upon the Civil

Complaint.  Moreover, he maintains that at the trial the Plaintiff failed to present any

evidence to support a claim for injury which was intended by Elias or substantially certain

to occur from his conduct.  With respect to his execution of the Admission, he asserts that

it was not the equivalent of a guilty plea on the assault and battery charge, and he maintains

that he signed it to end lengthy and expensive litigation which was impairing his ability to

---

[6] The <u>Hermosilla</u> line of cases, which involve two bankruptcy court decisions as well as decisions from the United States District Court for the District of Massachusetts and the United States Bankruptcy Appellate Panel of the First Circuit, involved a § 523(a)(6) exception to discharge proceeding.  In <u>Hermosilla v. Hermosilla (In re Hermosilla)</u>, 430 B.R. 13 (Bankr. D. Mass. 2010)("<u>Hermosilla I</u>"), the Bankruptcy Court entered summary judgment in favor of the plaintiff.  Following an appeal to the United States District Court and a remand, 447 B.R. 661 (D. Mass. 2011)("<u>Hermosilla II</u>"), the Bankruptcy Court issued <u>Hermosilla v. Hermosilla (In re Hermosilla)</u>, 450 B.R. 276 (Bankr. D. Mass. 2011)("<u>Hermosilla III</u>"), later affirmed by the Bankruptcy Appellate Panel, in which the Bankruptcy Court reiterated a number of the findings and holdings from <u>Hermosilla I</u>.  It would appear that the Plaintiff intended to rely on <u>Hermosilla I</u>, rather than <u>Hermosilla III</u> which she cited in her brief.

meet his obligations and care for his son.

## V. DISCUSSION

Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt that results from "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The terms "willful" and "malicious" are two distinct elements, and each must be proven to establish an exception to discharge. Fischer v. Scarborough (In re Scarborough), 171 F.3d 638, 641 (8th Cir.1999). The Plaintiff bears the burden of proving her claim nondischargeable under § 523(a)(6) by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287, 111 S. Ct. 654 (1991).

In Kawaauhau v. Geiger, 523 U.S. 57, 118 S. Ct. 974 (1998), the United States Supreme Court addressed the definition of the term "willful." The Court determined that the term "willful" modifies the word "injury" in § 523(a)(6) and therefore "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." Id. at 61 (emphasis in original). Thus, recklessly or negligently inflicted injuries are not excepted from discharge under § 523(a)(6). Id. at 64. *See also* Trenwick America Reinsurance Corp. v. Swasey (In re Swasey), 488 B.R. 22 (Bankr. D. Mass. 2013).

In Read & Lundy, Inc. v. Brier (In re Brier), 274 B.R. 37 (Bankr. D. Mass. 2002), this Court reviewed post-Geiger case law with respect to the willful element of § 523(a)(6):

> In McAlister v. Slosberg (In re Slosberg), 225 B.R. 9 (Bankr. D. Me. 1998), the bankruptcy court observed that [the Supreme Court in Geiger] . . . did not indicate whether the willfulness element includes "acts intentionally done and which are known by the actor to be '*substantially* certain to cause injury.' " Id. at 18 (emphasis in original). Noting that the "substantially certain"

11

formulation had been adopted in most post- <u>Geiger</u> decisions, <u>id</u>. n.12, and is prominent in the Restatement (Second) of Torts § 8A, the bankruptcy court in <u>Slosberg</u> adopted that formulation. It concluded that "a debtor who intentionally acts in a manner he knows, or is substantially certain, will harm another may be considered to have intended the harm and, therefore, to have acted willfully within the meaning of § 523(a)(6)." <u>Id</u>. at 19 (footnote omitted).

<u>Brier</u>, 274 B.R. at 43-44.

The United States Court of Appeals for the First Circuit in <u>Printy v. Dean Witter Reynolds, Inc.</u>, 110 F.3d 853, 859 (1st Cir.1997), held that the element of malice in § 523(a)(6) requires that the creditor show that the willful injury was caused without justification or excuse. In <u>Bauer v. Colokathis (In re Colokathis)</u>, 417 B.R. 150 (Bankr. D. Mass. 2009), this Court construed <u>Geiger</u> and <u>Printy</u>, as well as post- <u>Geiger</u> cases such as <u>Slosberg</u> and concluded that for an exception to discharge under 11 U.S.C. § 523(a)(6) to apply, the creditor has the burden of showing that " . . . 1) the creditor suffered injury; 2) the debtor intended to cause the injury or that there was substantial certainty that the injury would occur; and 3) the debtor had no justification or excuse for the action resulting in injury." <u>Id</u>. at 158.

As discussed at length above, the Plaintiff did not directly question Elias about the incident with the Plaintiff or call any other witnesses. She established no facts about the event giving rise to her claim against Elias other than what can be extracted from the charge contained in Count 1 of the Criminal Complaint and Elias's admission to sufficient facts to support a conviction on that charge. The issues to be determined then are whether Elias's admission is tantamount to a finding of guilt on the assault and battery charge and, if so,

12

whether the factual elements of that crime under Massachusetts law meet the "willful and malicious" standard under § 523(a)(6). This requires a review of Massachusetts criminal law and procedure.

Pursuant to Mass. Gen. Laws ch. 278, § 18,[7] a defendant may tender "an admission of facts sufficient for finding of guilt," and "such admission shall be deemed a tender of a plea of guilty for purposes of the procedures set forth in this section." *See also* Mass. R. Crim. P. 12(a)(2).[8] The procedures referenced in Mass. Gen. Laws ch. 278, § 18 include those

---

[7] Mass. Gen. Laws ch. 278, § 18, provides, in relevant part, the following:

A defendant who is before the Boston municipal court . . . on a criminal offense within the court's final jurisdiction shall plead not guilty or guilty, or with the consent of the court, nolo contendere. Such plea of guilty shall be submitted by the defendant and acted upon by the court; provided, however, that a defendant with whom the commonwealth cannot reach agreement for a recommended disposition shall be allowed to tender a plea of guilty together with a request for a specific disposition. Such request may include any disposition or dispositional terms within the court's jurisdiction, including, unless otherwise prohibited by law, a dispositional request that a guilty finding not be entered, but rather the case be continued without a finding [CWOF] to a specific date thereupon to be dismissed, such continuance conditioned upon compliance with specific terms and conditions or that the defendant be placed on probation . . . .

If a defendant, notwithstanding the requirements set forth hereinbefore, attempts to enter a plea or statement consisting of an admission of facts sufficient for finding of guilt, or some similar statement, such admission shall be deemed a tender of a plea of guilty for purposes of the procedures set forth in this section . . . .

[8] Mass. R. Crim. P. 12(a)(2), entitled "Admission to Sufficient Facts" provides: "In a District Court, a defendant may, after a plea of not guilty, admit to sufficient facts to warrant a finding of guilty."

implemented here, namely, a CWOF to a specific date, December 14, 2011, conditioned on

Elias's compliance with the specific terms of the Admission, namely, staying away from the

Plaintiff and the payment of fines, following which the charge against him would have been

dismissed. *See* <u>Commonwealth v. Villalobos</u>, 437 Mass. 797, 801, 777 N.E.2d 116 (2002)(A

CWOF to a specific date, following an admission to sufficient facts under Mass. Gen. Laws

ch. 278, § 18, is conditioned on compliance with specific terms, at which time the charge will

be dismissed).  Although Elias did not tender a formal guilty plea and he does not believe

the Admission constitutes a guilty plea, "a judge is entitled to treat an admission to

sufficient facts as the functional equivalent of a guilty plea if the admission was made

knowingly and voluntarily." <u>Commonwealth v. Greene</u>, 400 Mass. 144, 145-46, 508 N.E.2d

93 (1997)(footnote omitted). An admission to sufficient facts followed by a CWOF is not a

"conviction" under Massachusetts law. <u>Villalobos</u> at 802 (citing <u>Commonwealth v. Jackson</u>,

45 Mass. App. Ct. 666, 670, 700 N.E.2d 848 (1998)).  "Indeed, one of the purposes underlying

the disposition of continuance without a finding is to allow a deserving defendant to

"avoid[ ] the consequences of having a criminal conviction." <u>Id</u>. (citing <u>Commonwealth v.</u>

<u>Pyles</u>, 423 Mass. 717, 722 n.7, 672 N.E.2d 96 (1996)(quoting <u>Commonwealth v. Duquette</u>, 386

Mass. 834, 843, 438 N.E.2d 334 (1982)).

    Elias testified that he understood the terms and consequences of the Admission and

his signature thereon confirms that he signed it voluntarily.  Additionally, the record

indicates that the procedures set forth in Mass. Gen. Laws ch. 278, § 18 were followed.

Accordingly, the Court will treat Elias's admission as tantamount to a guilty plea and will

14

deem him to have admitted to the factual elements of the crime with which he was charged

in Count 1 of the Criminal Complaint.  *See* Hopkins v. Medeiros, 48 Mass. App. Ct. 600, 724

N.E.2d 336 (2000)("An admission to sufficient facts may be introduced against the defendant

in a subsequently litigated civil suit arising out of the same incident on the theory that the

proceeding was the functional equivalent of a guilty plea, with the same degree of finality."

Id. at 613 (citing Flannery, et al., *Massachusetts Evidence* (1999) § 3.5.1(b); Davis v. Allard, 37

Mass. App. Ct. 508, 511, 641 N.E.2d 121 (1994), *rev'd on other grounds,* Davis v. Westwood

Group, 420 Mass. 739, 652 N.E.2d 567 (1995)).

The Court turns next to the elements of Count 1, assault and battery.   In

Massachusetts, "[t]he punishments for the crimes of assault and assault and battery, . . . , are

established by statute, but the elements necessary to convict a person of these crimes are

determined by the common law." Commonwealth v. Porro, 458 Mass. 526, 529, 939 N.E.2d

1157 (2010); *see also* Mass. Gen. Laws ch. 265, § 13A (prescribing the penalty for, but not

defining the elements of assault and battery).  Under Massachusetts common law, "there

are two theories of assault and battery: intentional battery and reckless battery." Id. at 529

(citing Commonwealth v. Burno, 396 Mass. 622, 625, 487 N.E.2d 1366 (1986)). The Porro

court explained the difference:

> An intentional assault and battery is "the intentional and unjustified use of
> force upon the person of another, however slight." Commonwealth v. McCan,
> 277 Mass. 199, 203, 178 N.E. 633 (1931). *See* Commonwealth v. Moore, 36 Mass.
> App. Ct. 455, 459, 632 N.E.2d 1234 (1994)(assault and battery involves
> touching that is intentional, not simply result of intentional act). Where the
> touching is physically harmful, "consent is immaterial," but "a nonharmful
> touching is a battery only if there is no consent." Commonwealth v. Burke,

15

> 390 Mass. at 481, 457 N.E.2d 622. A reckless assault and battery is committed when an individual engages in reckless conduct that results in a touching producing physical injury to another person; an unconsented touching is not sufficient. Commonwealth v. Burno, *supra*. Commonwealth v. Correia, 50 Mass. App. Ct. 455, 456, 458, 737 N.E.2d 1264 (2000). Commonwealth v. Welch, 16 Mass. App. Ct. 271, 275–276, 450 N.E.2d 1100 (1983).

Porro, 458 Mass. at 529-30.   Thus, intentional assault and battery is either nonharmful but offensive intentional touching without consent *or* it is a harmful intentional touching where consent is immaterial.  Reckless assault and battery, on the other hand, is harmful touching stemming from reckless conduct.

Nothing in the Criminal Complaint indicates whether the charge in Count 1 was one for intentional or reckless assault and battery, so it could refer to either.[9]  The distinction is critical to the dispute here because, under Geiger, 11 U.S.C. § 523(a)(6) requires more than recklessness for a debt to be nondischargeable. Because the Plaintiff did not allege any intentional acts in her Complaint, other than a conclusory statement that the assault and battery was "willful and malicious," and because she introduced no evidence at trial establishing either that Elias was charged with intentional assault and battery or the elements of  that crime, the Court has no basis from which to infer that Elias was charged with the intentional use of force against the Plaintiff.  Even if the Court were to construe Elias's testimony that the parties engaged in "consensual touching" as an admission of intentional touching, the Plaintiff failed to rebut Elias's assertion of consent.  She also failed

---

[9] The Plaintiff apparently conceded this point in her post-trial brief in which she states that Elias "admitted to either (a) an intentional assault and battery, . . . , or to (b) a wanton or reckless assault and battery, which caused the Plaintiff physical harm."

to prove harmful touching, where consent is immaterial, because she did not establish at trial that she suffered any injury.   Accordingly, the Court is compelled to construe Elias's admission to sufficient facts on Count 1 of the Criminal Complaint as an admission to reckless assault and battery.  *See* <u>Bybee v. Geer, (In re Geer)</u>, 137 B.R. 37. 43 (Bankr. W.D. Mo. 1991)(court was unable to determine from the text of jury instructions whether jury based an award of punitive damages on evil motive *or* reckless indifference in a conversion case and found that plaintiff could not rely on principles of collateral estoppel to prove that conversion constituted "willful and malicious injury" under § 523(a)(6)).

The Court turns next to the crime of reckless assault and battery.  As discussed above, to establish an exception to discharge under 11 U.S.C. § 523(a)(6), the Plaintiff had the burden of showing by a preponderance of the evidence that: 1) she suffered injury; 2) Elias intended to cause the injury or that there was substantial certainty that the injury would occur (1 and 2, jointly, the "willful" element of § 523(a)(6)); and 3) Elias had no justification or excuse for the action resulting in injury (the "malicious" element).  <u>In re Colokathis</u>, 417 B.R. at 158.  While mindful that recklessly inflicted injuries are not excepted from discharge under the Supreme Court's holding in <u>Geiger</u>, the Court will nonetheless review the above elements in light of the factual components of reckless assault and battery under Massachusetts law and the evidence presented by the Plaintiff at trial.

In <u>Commonwealth v. Correia</u>, 50 Mass. App. Ct. 455, 737 N.E.2d 1264 (2000), the Appeals Court of Massachusetts explained the evidentiary requirements for a finding of guilty on the crime of reckless assault and battery.  It stated:

17

> To convict under the recklessness aspect of assault and battery, "the Commonwealth must prove (1) that the defendant's 'conduct involve[d] a high degree of likelihood that substantial harm will result to another,' Commonwealth v. Welansky, [316 Mass. 383, 399, 55 N.E.2d 902 (1944)] or that it 'constitute[d] . . . a disregard of probable harmful consequences to another,' Commonwealth v. Vanderpool, 367 Mass. 743, 747, 328 N.E.2d 833 (1975), *and* (2) that, as a result of that conduct, the victim suffered some physical injury." (footnote omitted).

Correia, 50 Mass. App. Ct. at 458.

Although the Plaintiff presented no testimonial evidence of injury at trial, the Admission, at least as it relates to reckless assault and battery, is sufficient to establish injury because a material element of reckless assault and battery is "personal injury to another." The Court, therefore, finds that the Plaintiff has sustained her burden in establishing the first element of the "willful" injury test of § 523(a)(6), i.e., that the Plaintiff suffered injury, through her introduction of the Admission at trial. The Court, however, is unable to find that the Admission satisfies the second element of the "willful" injury test, namely that Elias intended to cause the injury to the Plaintiff or that there was substantial certainty that the injury to her would occur from his conduct. The crime of reckless assault and battery is an alternative to intentional assault and battery and is predicated on reckless rather than intentional conduct. Accordingly, the Admission cannot serve to establish Elias's intention to cause injury to the Plaintiff. Even under the "substantial certainty" formulation of "willful," the Admission still fails to satisfy the Plaintiff's evidentiary burden. Simply stated, "high degree of likelihood" and "probable harmful consequences," as articulated by Correia above, are lower thresholds than the "substantial certainty" of harm required for

18

willful injury under § 523(a)(6).

The Plaintiff's reliance on <u>Commonwealth v. Welansky</u>, 316 Mass. 383, 399, 55 N.E.2d 902 (1944), also cited by the Court in <u>Correia</u>, is unavailing.  Although the <u>Welansky</u> court held that "[w]anton or reckless conduct is the legal equivalent of intentional conduct[,]" <u>id</u>. at 401 (citing <u>Aiken v. Holyoke Street Railway</u>, 184 Mass. 269, 271, 68 N.E. 238 (1903)), it clarified that "[w]hat must be intended is the conduct, not the resulting harm." <u>Id</u>. at 398 (citing <u>Altman v. Aronson</u>, 231 Mass. 588, 592, 121 N.E. 505 (1919)).  Again, the Plaintiff appears to confuse intentional conduct with intentional injury. *See* <u>Geiger</u>, 523 U.S. at 61 ("[n]ondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.")(emphasis in original). As the Plaintiff has failed to establish willful injury to the Plaintiff under § 523(a)(6), the Court need not reach the element of malice.

The Court is compelled to note that had the Plaintiff offered any additional evidence to supplement the Admission, the outcome here could have been different.  Indeed, had the Plaintiff testified herself that Elias had actually engaged in the conduct so graphically detailed in the Civil Complaint, or if she, at a minimum, examined Elias at trial on these allegations, there could have been sufficient evidence from which to determine that Elias's conduct was substantially certain to have injured the Plaintiff. The Civil Complaint establishes no more than unproven allegations of Elias's conduct and cannot, without more, establish that he engaged in the acts described therein.

There are numerous decisions in this district holding that a debtor's liability for

19

assault and battery is nondischargeable under § 523(a)(6). *See* <u>Jones v. Svreck (In re Jones)</u>, 300 B.R. 133, (B.A.P. 1st Cir. 2003)(administrative officer's specific findings of sexual harassment by the debtor, including a finding that debtor's conduct was "intentionally or in effect hostile, intimidating or humiliating" to the plaintiff, which were affirmed by the state's enforcement commission, collaterally estopped the debtor in a § 523(a)(6) case); <u>Pettey v. Belanger</u>, 232 B.R. 543, 546–47 (D. Mass. 1999)(holding that the debtor's liability for sexual assault and battery in Massachusetts "falls squarely within the exception contained in § 523(a)(6)" and is "a classic example of intentional tort."); <u>Hermosilla v. Hermosilla (In re Hermosilla)</u>, 430 B.R. 13 (Bankr. D. Mass. 2010)(discussed below), *appeal dismissed*, 447 B.R. 661 (D. Mass. 2011) *and subsequent determination*, 450 B.R. 276 (Bankr. D. Mass. 2011), *aff'd*, MB 11-045, 2011 WL 6034487 (B.A.P. 1st Cir. Nov. 14, 2011)**;** and <u>Gomes v. Limieux (In re Limieux)</u>, 306 B.R. 433 (Bankr. D. Mass. 2004)(prior state court jury verdict against Chapter 7 debtor for the intentional tort of assault and battery established that debtor had acted with intent to injure or with substantial certainty that injury would result, and prevented debtor from contesting nondischargeability of resulting judgment debt, as one for his "willful and malicious injury.").   These cases, however, do not involve a crime based on recklessness, a standard of conduct below the threshold imposed by <u>Geiger</u>, and the rulings are the product of more highly developed records than the one established by the Plaintiff in this case.   That is particularly true with respect to <u>Hermosilla I</u>, the only one of the above cases cited by the Plaintiff, which involved a debtor who admitted to sufficient facts in a state court criminal proceeding for assault and battery *and* who also admitted in

20

a joint pretrial statement that he "intended to cause and did cause [his ex-wife] physical harm and pain . . . ." <u>Hermosilla I</u> 430 B.R. at 16. As the full details of the incident between the Plaintiff and Elias never emerged at trial, a number of factual and legal ambiguities resulted which undermined the Plaintiff's case under § 523(a)(6). While the result here may be unsatisfying, the Court is mindful that the criminal case, which resulted in two mistrials, may have suffered from similar infirmities.

## VI. CONCLUSION

For all of the above stated reasons, the Court finds that the Plaintiff's evidence, consisting only of the Criminal Complaint, the Admission and minimal examination of Elias, did not establish by a preponderance of the evidence that her debt is nondischargeable under 11 U.S.C. § 523(a)(6). Accordingly, any debt owed to the Plaintiff by Elias arising out of the incident which occurred on April 14, 2008 is discharged. The Court shall enter a judgment in favor of Elias.

By the Court,

Dated: July 3, 2013                     Joan N. Feeney
                                        United States Bankruptcy Judge

21